IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES PILOTS ASSOCIATION, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. 3:21-cv-2608 |
| SOUTHWEST AIRLINES CO., | §<br>§<br>§ | |
| Defendant. | §<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Southwest Airlines Pilots Association (hereinafter "SWAPA" or "Plaintiff"), by and through its President Casey Murray, and by and through its attorneys, Gillespie Sanford LLP, files this Original Complaint against Southwest Airlines Co. ("Southwest Airlines" or "Defendant"), seeking declaratory and injunctive relief, and other remedies. SWAPA would show the following:

## I.    PARTIES, JURISDICTION, AND VENUE

1.     SWAPA is a not-for-profit labor organization with its principal offices located at 1450 Empire Central Drive, Suite 737, Dallas, TX 75247. SWAPA is the sole collective bargaining representative under the Railway Labor Act ("RLA"), 45 U.S.C. § 151-188, for the over 9,000 pilots of Southwest Airlines.

2.     Southwest Airlines is a domestic for-profit corporation, organized and existing under the laws of the State of Texas and having offices and its principal place of business at 2702

Love Field Drive, Dallas, Texas 75235.  Southwest Airlines is a "common carrier" by air engaged in interstate and foreign commerce under 45 U.S.C. § 181 and is subject to the provisions of the RLA.  Southwest Airlines is headquartered and does business in the state of Texas and within the Northern District of Texas.  Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b) because jurisdiction is not dependent on diversity of citizenship and Southwest Airlines resides in and is doing business in this district and division.  Defendant Southwest Airlines may be served via its registered agent for service, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

3.       This Court has subject matter jurisdiction under the RLA, 45 U.S.C. §§ 151 *et seq.,* pursuant to 28 U.S.C. § 1331.  This Court also has jurisdiction herein pursuant to 28 U.S.C. § 1337, as this is an action arising under a statute that regulates commerce and/or protects trade and commerce against restraints—namely, the RLA.  Plaintiff's claims are also brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  Plaintiff seeks a declaration as to the parties' rights and obligations under the RLA.  SWAPA is entitled to such a declaration because the instant dispute is an actual and existing controversy.

4.       The immediate injunctive relief sought by this action is necessary to stop Defendant Southwest Airlines' unlawful actions which undermine the union and the pilots it represents in collective bargaining with Defendant Southwest Airlines and threaten to destroy the union. Specifically, Defendant Southwest Airlines has spent years isolating a select group of SWAPA's membership (Check Airmen and Standards Check Airmen) and interfering with these pilots' legally protected right to openly participate and engage in union activity.  Southwest Airlines' anti-union animus boiled over recently when, in a work conduct investigation that involved a few Standards Check Airmen, the only one Southwest Airlines summarily terminated from his

Standards post was also the only one who had taken a leadership role in SWAPA committee work and had a history of being targeted by management for his union affiliation.  By its actions, Defendant Southwest Airlines sent a clear message to all pilots – participate in SWAPA activity and you will forever have a bullseye on your back.

5.     Defendant Southwest Airlines is in violation of Section 2, Third and Fourth of the RLA (45 U.S.C § 152, Third and Fourth), which prohibit "interference... influence or coercion" in employees' choice to form, join, or support a union. Defendant Southwest Airlines' actions are motivated by anti-union animus and aim to destroy SWAPA's ability to represent its members. Defendant Southwest Airlines' anti-union actions have an immediate and irreparable chilling effect on all other pilots as Defendant Southwest Airlines influences and coerces other pilots from participating in the union.  This case and controversy is therefore appropriately before this court. *See Brotherhood of Ry. Trainmen v. Central of Ga. Ry.*, 305 F.2d 605, 608-09 (5th Cir. 1962); *Brotherhood of Ry. Carmen. V. Atchison, Topeka & Stanta Fe,* 847 F.2d 403 (5th Cir. 1990), footnote 10, and *Brotherhood of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 2021 U.S. Dist. LEXIS 124466, *6 (W.D. Tex., July 2, 2021).

6.     Venue exists in this district and division under 28 U.S.C. § 1391 and 38 U.S.C. § 4323(c).

## II.     NATURE OF THE ACTION

7.     SWAPA brings this action against Defendant Southwest Airlines for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, and 45 U.S.C. §§ 151-188, the Railway Labor Act.  45 U.S.C. §§ 156 and 181.

8.     SWAPA and Defendant Southwest Airlines are parties to a collective bargaining agreement negotiated for the period September 1, 2012 through August 31, 2020 ("the current

CBA").  Pursuant to the terms of the RLA, the current CBA continues in effect after August 31, 2020, even as the parties (SWAPA and Southwest Airlines) have carried on sporadic negotiations to reach a new collective bargaining agreement pursuant to the RLA's Section 6 dispute resolution process.  *Detroit & T.S.L.R.R. v. UTU,* 396 U.S. 142, 149-53 (1969).

9.     This action is brought by Plaintiff SWAPA on its own behalf and on behalf of all Southwest Airlines employees in the craft or class of Pilots, which SWAPA represents.

### III.    FACTS

**A.    The LUV Airline**

10.    Southwest Airlines, with "LUV" as its stock ticker symbol, is affectionately known as the "LUV Airline."  The LUV Airline was founded by Herb Kelleher, known to one and all as "Herb," who touted that "[t]he business of business is People."  HSMAmericas, *Business of business is people: Herb Kelleher*, YOUTUBE (Oct. 14, 2008), https://www.youtube.com/watch?v=oxTFA1kh1m8.  Herb and his people created the most amazing success story in the history of commercial aviation, using a disruptive business model and a unique people culture that, to this day, are being studied by business schools and emulated by businesses all over the world.  It was ingeniously simple.  Herb believed that if you make your employees happy, you'll have happy customers.  And when you have happy customers, they come back, and that makes happy shareholders.  So, for Herb, employees always came first.  As he was often quoted to say, "[s]tart with employees and the rest follows from that."    Shep Hyken, *How Southwest Airlines Keeps The Romance Alive With Its Customers*, FORBES, MAY 18, 2018, https://www.forbes.com/sites/shephyken/2018/03/18/how-southwest-keeps-the-romance-alive-with-its-customers/?sh=20adaa311656.

11.    At the LUV Airline, three core values are instilled in its employees:  a warrior's spirit, a servant's heart, and a fun-luving attitude.  A warrior's spirit is to strive to be the best, display a sense of urgency, and never give up.  A servant's heart is to follow the "Golden Rule" – put other people first, treat others with respect, and embrace the Southwest Family.  A fun-luving attitude is to be a passionate team player, to not take yourself too seriously, and to celebrate successes.  Culture, Southwest Careers, https://careers.southwest.air.com/culture (last visited Oct. 8, 2021).

12.    Thus, it is not by mistake that the over 9,000 Pilots who fly for Southwest Airlines are the most productive and safest aviators in the industry.  *See* Southwest Airlines Pilots Association, https://www.swapa.org (last visited October 19, 2021); *see also* Pilots & Flight Operations, Southwest Careers, https://careers.southwestair.com/c/pilots-flight-operations-jobs (last visited October 19, 2021).  They live and breathe Herb's core values.  As Herb once said, "[c]ompetitors can buy all the physical things. The things you can't buy are dedication, devotion, loyalty – the feeling that you are participating in a crusade."  That encapsulates Southwest Airlines pilots – dedicated, devoted, and loyal.  Carmine Gallo, *Southwest Airlines Motivates Its Employees With A Purpose Bigger Than A Paycheck,* Forbes, Jan. 21, 2014, https://www.forbes.com/sites/carminegallo/2014/01/21/southwest-airlines-motivates-its-employees-with-a-purpose-bigger-than-a-paycheck/?sh=f6ee9ad53769.

**B.    Labor Relations**

13.    In labor relations, Herb led in the same way.  His word was his bond.  He regarded the pilots as his partners in the building of the airline, and thus had a curious affinity for them.  He was a frequent caller at SWAPA's union halls, bargaining with pilots over their working conditions, rules, and pay.  Even when there was no collective bargaining activity, Herb was at

SWAPA just to spend time with his employees.  He donated personal funds to SWAPA's charitable scholarship funds and pilot emergency funds.  Unlike management employees, pilots do not work out of nor have offices at the airline's headquarters, so Herb would spend time with his pilots at the union halls.

14.    Until his last days at the helm, Herb inspired his employees to row in the same direction, management and represented labor alike.  For nearly four decades, there was no labor strife at the LUV Airline, so much so that the general public was under the impression that there were no labor unions on property.  That was Herb's legacy.  He built trust with unions.  KEVIN FREIBERG & JACKIE FREIBERG, NUTS! SOUTHWEST AIRLINES' CRAZY RECIPE FOR BUSINESS AND PERSONAL SUCCESS 108 (1st ed. 1996).  Unfortunately, the LUV Airline has drifted far from Herb's core values.

15.    In recent years, management at Defendant Southwest Airlines has kept the pilots' union at arm's length; they are no longer partners.  When Herb stepped down as chairman in 2008, Defendant Southwest Airlines soon lost sight of its founding philosophy under new leadership: the business of business was no longer people.  This was very much highlighted during the last eighteen months of the COVID-19 pandemic, from Defendant Southwest Airlines' attempt to extort a 10% concession from labor, to threatening to furlough 1,221 pilots, to making unilateral changes to the pilots' working conditions, rules, and pay.  David Koenig, *Southwest warns nearly 7,000 workers of possible furloughs*, AP NEWS, December 3, 2020, https://apnews.com/article/dallas-coronavirus-pandemic-labor-unions-b12520e591b181f60341d2b5cbb94ea1.   These unilateral changes came under the guise of "programs" and "policies" implemented unilaterally by management that have not been bargained for with SWAPA.  After months of being stonewalled by Defendant Southwest Airlines, SWAPA had no choice but to seek federal court intervention to stop management's *status quo* violations

under Section 6 of the RLA.  That lawsuit, *Southwest Airlines Pilots Association v. Southwest Airlines Co.*, Civil Action No. 3:21-cv-02065-M, was filed on August 30, 2021 and is pending in the U.S. District Court for the Northern District of Texas. *See Plaintiff's First Amended Complaint and Jury Demand*, October 6, 2021, ECF No. 10.

C.     **Anti-Union Animus**

16.     Over the past several years at Southwest Airlines, there has been an undercurrent of fear by employees that one will be slighted or ostracized by management for being on the side of the union.  For SWAPA pilots, the fear is not merely an undercurrent, but a surface level threat and concern at all times because SWAPA pilots have been subjected to management's open and express attacks for exercising their legally protected right to engage and participate in union activities.

17.     SWAPA is the certified bargaining representative for the over 9,000 pilots who fly for Defendant Southwest Airlines.  SWAPA's membership includes those select pilots who serve in the capacity as Check Airmen and Standards Check Airmen (also referred to as "SCAs").  Check Airmen are responsible for the training and evaluation of aviators.  Standards Check Airmen are responsible for the training and evaluation of Check Airmen.  They are in essence the Check Airmen of Check Airmen.

18.     Not surprisingly, these elite positions require additional training and testing before the issuance of special qualifications.  Only a select few make it to this level and get to work closely with management on ensuring proper training and evaluation of Defendant Southwest Airlines' pilot workforce.  They earn more responsibilities, prestige, and pay, above those given to regular or line pilots.  Out of the over 9,000 pilots, there are roughly 300 Check Airmen and 30 Standards Check Airmen in total.

19.     Like all Southwest pilots, SWAPA represents Check Airmen and Standards Check Airmen. Historically, Defendant Southwest Airlines has thwarted SWAPA's ability to represent this elite corps of pilots.[1]  For decades, Check Airmen operated under a set of undisclosed guidelines established unilaterally by Defendant Southwest Airlines, which set out the working conditions, rules, and pay for Check Airmen (the "Check Airmen Guide") without any bargaining with the pilots' union.  Check Airmen, fearful of losing their special qualification or otherwise suffering management retaliation, were uncomfortable reaching out to SWAPA for representation or even sharing a copy of the Check Airmen Guide.

20.     Over the years, SWAPA demanded a copy of the Check Airmen Guide and was repeatedly refused by Defendant Southwest Airlines.  Incredibly, it was not until the mediated negotiations over the most current CBA in 2016 with the National Mediation Board that Defendant Southwest Airlines was finally forced to produce a copy of the Check Airmen Guide to SWAPA. The 2016 CBA was reached after almost five years of contentious labor negotiations and a failed tentative agreement. This was achieved with staunch informational picketing by hundreds of pilots across several bases, including at Defendant Southwest Airlines' Dallas Love Field headquarters.

21.     In or about 2018, SWAPA decided to stand up a pilot committee to work on Check-Airmen-related issues for the first time in its history.[2]  This was met with an aggressive attack by Defendant Southwest Airlines.  On or about June 22, 2018, during the time when SWAPA had an

---

[1] General references to "Check Airmen" throughout this document include both Check Airmen and Standards Check Airmen.  The term "Check Airmen" includes both the elite male and female pilots who perform in that capacity.

[2] Union advocacy is performed by union executives and committees of pilot members.  At SWAPA, there are over twenty committees that represent key pilot issues, such as the Safety Committee, Negotiating Committee, Contract Administration Committee, Benefits/Aeromedical Committee, the 401(k) Committee, and the Training & Standards Committee, to name a few.

open call for pilot volunteers to join its new Check Airmen Committee, Defendant Southwest Airlines issued to all pilots a revision to its Flight Operations Training Manual ("FOTM") prohibiting all participation:

> "**Employees who currently have an FAA Check Airman/Check Pilot authorization letter on file at Southwest Airlines <u>are prohibited</u> from participating in SWAPA-controlled committees and from serving as an officer in the SWAPA organization.**"

(FOTM Section 14, Revision 18-03, dated 6/22/2018)(emphasis added)  There could be no clearer shot across the bow of Defendant Southwest Airlines' anti-union stance than this.

22.    Management expressly forbade pilots from exercising their legal right to participate and engage in protected union activities.  SWAPA immediately demanded that Defendant Southwest Airlines retract this FOTM directive.  Although eventually retracted, the harm was already done.  The FOTM revision served Defendant Southwest Airlines' goal: to intimidate and dissuade all pilots, especially Check Airmen, from affiliating with and participating in union activities and from serving as officers within SWAPA.

23.    This direct evidence of anti-union animus was not isolated. It followed years of whisper campaigns and private admonishments against pilots from getting involved with SWAPA. As discussed above, Defendant Southwest Airlines had historically refused to disclose details of Check Airman working conditions, rules, or pay to SWAPA.  Because Check Airmen worked closely with management in the performance of their Check Airmen duties, they were unavoidably under the watchful eye of management.

24.    Beginning in or about 2016, during heated Section 6 negotiations, SWAPA hosted informal gatherings or "open houses" for Check Airmen on a quarterly basis at a local crew hotel in Dallas.  These off-duty gatherings were an outreach effort by SWAPA to connect with Check

Airmen, to better understand their labor representational interests and needs, and to share union information.  These open houses were relatively well-attended, often with 30 to 40 Check Airmen.

25.     However, once it became apparent that SWAPA was making headway in building a relationship with its Check Airmen membership by early 2017, one open house suddenly had zero attendees.  Check Airmen did not attend because they were coerced and intimidated by Defendant Southwest Airlines in a whisper campaign.  Check Airmen who chose to affiliate with the union were threatened with having their special qualifications pulled and sent back to the line, losing their prestigious Check Airmen responsibilities, titles, and pay.

26.     Southwest clearly communicated that threat to one Standards Check Airman, Captain Timothy Roebling ("SCA Roebling"), in or about early 2019 when he considered a leadership position on the SWAPA Check Airmen Committee.   A twenty-year veteran of Defendant Southwest Airlines, SCA Roebling was selected to serve as a Check Airman in or about October 2013 and qualified in or about January 2014. Southwest promoted him to Standards Check Airman after two short years.   Prior to his involvement with the union, SCA Roebling was championed by Defendant Southwest Airlines.   He earned increasing responsibilities and management placed him on various challenging projects. Over the years, SCA Roebling performed exceptionally as a Check Airman and later Standards Check Airman and was recognized numerous times for his accomplishments by Defendant Southwest Airlines, his peers, and even passengers. Notably, he received the esteemed Southwest Star Award in or about October 2017, for leading the development work in 2017 on Continuing Qualification and Instructor/Evaluator Continuing Qualification.

27.     SCA Roebling's outspoken advocacy for high-quality standards in his work and the work of those he was evaluating was well-known.  Thus, when SWAPA stood up the first ever Check Airmen Committee, the union recruited SCA Roebling to join.

28.     SCA Roebling, having received Defendant Southwest Airlines' June 2018 FOTM revision, was concerned about the open hostility by management against SWAPA.  He is also amongst the Check Airmen who heard the whisper campaign by management warning Check Airmen that attending SWAPA open houses would be detrimental to their careers.  Indeed, anti-union animus was so palpable with the Check Airmen group that Check Airmen who had working conditions and pay issues were reluctant to come forward to grieve those issues, and those who did reach out to SWAPA begged to remain anonymous to avoid detection by Defendant Southwest Airlines.  The fear amongst Check Airmen seeking help from SWAPA continues, even as anonymous requests for help have intensified since or about March 2021.

29.     When SWAPA approached him, SCA Roebling did not make the decision to join its Check Airmen Committee lightly.  He set up formal meetings with his supervisors in the Standards Department to go over the reasons why he felt it was important for him to participate in the Check Airmen Committee, namely, to improve Check Airmen working conditions, rules, and pay and to forge collaboration between the Standards Department and SWAPA for the betterment of all Check Airmen.  The conversations were also important to him to ensure he was not going to be targeted or retaliated against for taking a position in SWAPA leadership.[3]  SCA Roebling had discussions with several in management, including Captain Chris Meehan (Director of Standards),

---

[3] Ironically, the Standards Department, which oversees the evaluation and qualifications of all Southwest Airlines' pilots, does not fall within the category of management groups that one would expect to harbor such hostility or vitriol against the union, such as labor administration or negotiations.

Captain Don Merritt (then-Senior Manager of Standards), and Captain Lee Kinnebrew (Senior Director of Training and Standards). It took him a month to make that decision.

30.    When SCA Roebling was ready to announce his acceptance onto the SWAPA Check Airmen Committee in or about April 2019, Captain Merritt, who was friendly with SCA Roebling, made a point to relay the threat from upper management, saying to SCA Roebling, **"if you take the SWAPA position, you will be stripped of all your quals."** It was apparent that even though management retracted its June 2018 FOTM written threat, its hostility toward SWAPA remained certain.

31.    SWAPA announced the members of the first Check Airmen Committee on or about June 3, 2019. In his new role as Co-Chair of the union committee, SCA Roebling took on many duties, contributing to the crafting of contract language for bargaining. He also actively advocated for Check Airmen with pay issues or who were under investigation for discipline.

32.    Unfortunately, Defendant Southwest Airlines made good on its open threat relayed by Captain Merritt. As soon SCA Roebling joined the Check Airmen Committee, management took action against him. Defendant Southwest Airlines shunned him, took him off projects, and stopped engaging with him on new projects. The Standards Department made it clear where SCA Roebling stood with management. He was assaulted with name calling by his peers (which management did nothing to discourage or stop): others told him he was called "traitor" and "turncoat"; he was directly called "Jon Weaks' Crony" (in reference to the then-union president, Captain Jon Weaks).

33.    SCA Roebling stayed on the SWAPA Check Airmen Committee until about December 2020. Even though he stepped down, SCA Roebling continued to be a marked man. Defendant Southwest Airlines did not relent in its animus toward SWAPA or SCA Roebling for

having taken a SWAPA position.  On or about March 25, 2021, Defendant stripped SCA Roebling

of all qualifications – not only as a Standards Check Airman, but also as a Check Airman.

Defendant made an example out of SCA Roebling to send an aggressive message to all pilots:

think twice before you ruin your career at Southwest Airlines by getting involved with SWAPA.

34.     Tellingly, the termination of his Check Airman position culminated from an incident

that had no bearing on SCA Roebling's execution of his professional duties as a Standards Check

Airman.  Specifically, in or about February 2021, the company investigated alleged inappropriate

content in a personal text chain used by the 30 or so Standards Check Airmen.  SCA Roebling,

along with a few Standards Check Airmen, were investigated.  A text conversation had been started

when a photo was posted, followed by a couple of Standards Check Airmen who used the phrase,

"Puerto Rican fence climber" to instigate what amounted to sophomoric reactions from the group.

One such text response was by SCA Roebling with a single word, "vagina."  After a full

investigation, it was determined that SCA Roebling lacked malicious intent and his Chief Pilot

gave him verbal counseling on or about March 5, 2021.[4]

35.     Typically, that would have closed the matter.  But because of SCA Roebling's union

ties, the Standards Department latched on to this pretext for retaliation.  SCA Roebling learned

that the Director of Standards, Captain Chris Meehan, was instigating and orchestrating a

campaign to punish him.  SCA Roebling was informed by his Chief Pilots that "Chris Meehan will

not let it go."  Despite having already been verbally counseled, SCA Roebling was reprimanded a

second time with written counseling on or about March 11, 2021.  That apparently was still not

---

[4] At Southwest Airlines, only the pilot's Chief Pilot has the authority to issue progressive
discipline.  Standards Department leaders, including the Director or any of the Senior Managers
or Managers, do not have the authority to issue punishment to Check Airmen.

enough for Captain Meehan.  On or about March 25, 2021, Captain Meehan terminated SCA Roebling from all Check Airman and Standards Check Airman duties.

36.     When asked by SWAPA officials – including Captain Casey Murray (SWAPA President), Captain Jay Bellar (Check Airmen Committee Chair) and Captain Greg Bowen (Training and Standards Committee Chair) – if SCA Roebling's performance in administering his Check Airman or Standards Check Airman duties had ever been questioned, Captain Meehan said "no."  When Captain Murray asked Meehan whether the "vagina" text was "the only reason" SCA Roebling was being fired, Captain Meehan said that it was.

37.     SCA Roebling was singled out because of his SWAPA history.  Southwest's disproportionate and disparate response to his "vagina" text was no more than a pretext to retaliate against him for taking what Defendant Southwest Airlines viewed as a rebellious stance against management.  Looking at the text chat, nearly all of the Standards Check Airmen participated in it, which was first set up in or about 2017 by another Senior Manager of Standards and later turned over to Captain Don Merritt, who also actively participated in the chat.

38.     A review of this chat thread revealed a subculture at Defendant Southwest Airlines, at least within the Standards Department, that does not measure up to the LUV Airline façade. Examples of offending language, beside the "Puerto Rican fence climber" text, include references that appear derogatory to various protected classes, including women, older persons, and the LGBTQ community.  Despite numerous other employees being involved in these text messages, SCA Roebling, who was active in the union, was the only SCA or Check Airman to lose his qualifications.

39.     No Check Airman without union affiliation has ever been subjected to the same level of hostility as SCA Roebling by Defendant Southwest Airlines.  Only in the most egregious case

of failure to meet the technical functions of administering their job duties as a Check Airman has a Check Airman ever had all of his qualifications pulled by Defendant Southwest Airlines.  In almost all cases, even the failure to meet the technical functions of administering their job duties as a Standards Check Airman received only a temporary suspension of qualifications.  Of course, they were not Standards Check Airmen with union affiliation.

40.     There is a clear double standard when it comes to SWAPA affiliation.  What is not okay for pilots with SWAPA affiliation is perfectly fine for pilots without SWAPA affiliation. Standards Check Airmen, fearful of retaliation, reported the following complaint about the Vice President of Flight Operations anonymously.   After SCA Roebling was terminated from the Standards Department, the Vice President of Flight Operations, Captain Bob Waltz, at a meeting in or about early April 2021, addressed the standard Check Airmen group about the situation. Captain Waltz admonished the group to not be a "dick."   Even without naming names, the derogatory reference to SCA Roebling was clear.   Alarmingly, Captain Waltz's use of inappropriate language – "dick" – was without retribution, further reinforcing the fact that management was less concerned about the "vagina" text and was retaliating against and punishing SCA Roebling for his union affiliation and activities.

41.     The message sent by Captain Bob Waltz, Captain Chris Meehan, Captain Lee Kinnebrew, and Defendant Southwest Airlines is clear – if you get involved with SWAPA, you will forever have a bullseye on your back, and management will come after you and destroy your career.  All of this together underscores Defendant Southwest Airlines' motivation of anti-union animus against SWAPA.  If not stopped, Southwest Airlines will continue to take steps to thwart union participation by pilot members and destroy SWAPA's ability to function as the certified bargaining representative of the pilot group.

## IV.    GOVERNING LAW

42.    Based upon all of these allegations in the verified complaint, Plaintiff is likely to succeed on the merits because its allegations are well-pleaded and supported in law.

43.    Plaintiff will suffer irreparable harm without an injunction because the collective and individual rights of SWAPA members are threatened with permanent harm and this will continue without an injunction.

44.    There is no adequate remedy at law because Plaintiff's injuries cannot be remedied with a damage award.

45.    The harm that the Plaintiff will suffer without the injunction is greater than the harm that preliminary relief would inflict on the Defendant because the relief sought merely requires Defendant to refrain from violating federal labor law.

46.    Congress enacted the RLA, among other reasons, to "forbid any limitation upon freedom of association among employees or any denial as a condition of employment or otherwise, of the right of employees to join a labor organization." 45 U.S.C. § 151a. Defendant's anti-union actions undermine this critical legislative objective.

47.    An injunction is in the public interest because the public has a strong interest in vindicating the public policy permitting employees to organize, choose their own representatives and bargain collectively free from interference, influence, or coercion by the carrier; hence, the interests of the public are aligned with Plaintiff herein.

48.    There are no public officers charged with the duty to protect the union who can furnish adequate protection.

49.    No prior application has been made to this or any other court for the relief requested herein.

50.     Plaintiff has made every reasonable effort to resolve this dispute to no avail. The unlawful actions of Southwest Airlines will continue to unlawfully undermine the representation of the union without immediate relief

## V.     CAUSES OF ACTION

### COUNT I - SECTION 2, THIRD OF THE RLA

51.     SWAPA re-alleges and incorporates the allegations stated in the above Paragraphs as if fully stated herein.

52.     Section 2, Third of the RLA, 45 U.S.C. § 152, Third provides:

> Representatives for the purposes of this chapter, shall be designated by the respective parties without interference, influence or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with influence, or coerce the other in its choice of representatives.

53.     The actions of Defendant Southwest Airlines referenced herein were motivated by anti-union animus and taken for the purpose of impairing the ability of the Union and its members to function and freely associate, to destroy support for the Union, to weaken the Union and to ultimately destroy it.

54.     By stripping Captain Roebling's SCA and Check Airman qualifications in retaliation for his efforts to be active in and fully participate in the Union, Southwest Airlines has interfered with, influenced, and coerced SWAPA Check Airmen and SCAs in the exercise of their right to designate representatives of their choosing and the right of the Union and its members to freely participate in activity protected under the RLA.

55.     By engaging in said actions, Defendant violated Section 2, Third of the RLA, 45 U.S.C. § 152, Third.

## COUNT II - SECTION 2, FOURTH OF THE RLA

56.     SWAPA re-alleges and incorporates the allegations stated in the above Paragraphs as if fully stated herein.

57.     Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth provides:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing . . . No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier . . . to influence or coerce employees in an effort to induce them . . . not to join or remain members of any labor organization.

58.     By stripping Captain Roebling's SCA and Check Airman qualifications in retaliation for his efforts to be active in and fully participate in the Union, Southwest Airlines has interfered and continues to interfere with the rights of employees to organize and bargain collectively, has interfered and continues to interfere with the organization of its employees, has used and continues to use the funds of the carrier in an effort to induce the members of the Union not to join or remain members of the Union, and has interfered and continues to interfere with the right of Union members to freely participate in the activities protected by under the RLA.

59.     The actions of Defendant referenced herein were motivated by anti-union animus and taken for the purpose of impairing the ability of the Union and its members to function and freely associate, to destroy support for the Union, to weaken the Union and to ultimately destroy it.

60.     By engaging in said actions, Defendant violated Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth.

## VI.    JURY DEMAND

61.    Plaintiff hereby demands a trial by jury on all claims and defenses in this action.

## VII.    PRAYER FOR RELIEF

WHEREFORE, SWAPA requests that Defendant Southwest Airlines be summoned to appear and answer, and that on each claim in the Verified Complaint the Court grant SWAPA the following relief:

(A)    Issue and grant immediate, preliminary injunctive relief enjoining Defendant Southwest Airlines from unlawfully interfering with the Union in its representational capacities, including without limitation disciplining members of the Union and Union leadership for their involvement or support for the Union and its interests, objectives and/or concerted protected.

(B)    Issue injunctive relief enjoining Defendant Southwest Airlines from unlawfully interfering with, influencing, and/or coercing Southwest Airlines employees represented by SWAPA and its representatives;

(C)    Immediate reinstatement for Union member Tim Roebling to work in his former position of employment with full restoration of his Check Airman and SCA qualifications and all actual and compensatory damages arising from his unlawful discipline, including but not limited to all lost pay and benefits;

(D)    Issue a declaratory judgment that the conduct of Defendant Southwest Airlines in taking adverse action against said Union member was in violation of Section 2, Third and Fourth of the Railway Labor Act, 45 U.S.C. ss 152, Third and Fourth;

(E)    Order Defendant Southwest Airlines to conspicuously post copies of this Court's order at Defendant's headquarters, all domiciles used by Southwest Airlines' crew

for a period of one-hundred and eighty (180) days; and

(F)     Award SWAPA punitive damages and monetary relief as follows:

1.   Punitive and exemplary damages in an amount to be determined at trial, to serve as punishment and deterrent in light of Defendant's wrongful acts committed in violation of the RLA;

2.   Plaintiff's attorneys' fees pursuant to the Declaratory Judgment Act;

3.   Plaintiff's reasonable costs associated with this proceeding;

4.   Plaintiff's pre-judgment and post-judgment interest;

5.   Grant such other and further relief as the Court deems equitable and just.

DATED: October 20, 2021

Respectfully submitted,

By: _/s/ Hal K. Gillespie_____
Hal K. Gillespie
hkg@gillespiesanford.com
Texas State Bar No. 07925500
James D. Sanford
jim@gillespiesanford.com
Texas State Bar No. 24051289
Joseph H. Gillespie
joe@gillespiesanford.com
Texas State Bar No. 24036636
Gillespie Sanford LLP
4803 Gaston Avenue
Dallas, Texas 75246
Phone: (214) 800-5111
Fax: (214) 838-0001

and

K. Helen Yu
hyu@swapa.org
Texas State Bar No. 24071565
Linelle S. Mogado*
lmogado@swapa.org
California Bar No. 236489
Southwest Airlines Pilots Association
1450 Empire Central Drive,
Suite 737
Dallas, TX 75247
Phone: (800) 969-7972
Fax (214) 351-2504

*Pro hac vice Application Pending

ATTORNEYS FOR PLAINTIFF
SOUTHWEST AIRLINES PILOTS
ASSOCIATION ("SWAPA")