# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

|  |  |  |
|---|---|---|
| SOUTHWEST AIRLINES PILOTS ASSOCIATION | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CASE NO. 3:21-cv-2608-E |
| | : | |
| SOUTHWEST AIRLINES CO. | : | |
| | : | |
| Defendant. | : | |

## <u>RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER AND CROSS-MOTION TO COMPEL</u>

Andrew B. Ryan
Texas Bar No. 24054464
Mitchell R. Garrett
Texas Bar No. 24101795
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
T: (214) 347-7377
F: (888) 594-6240
E: andy@ryanlawpartners.com
E: mitch@ryanlawpartners.com

*Counsel for Defendant*
*Southwest Airlines Co.*

## TABLE OF CONTENTS

I.     Introduction ............................................................................................... 5

II.    Relevant Procedural Background .................................................. 13

III.   SWAPA's Baseless Attacks on Captain Meehan ........................... 18

IV.   Arguments and Authorities ................................................................ 21

      A.    SWAPA's Witness Intimidation Argument Wholly Lacks Merit ........ 21

      B.    The Relief Sought by SWAPA is Untethered to Rule 26(c). .............. 27

      C.    The Court Should Compel SWAPA to Produce the Entire Hill-Roebling Text Chain and Present Captains Hill and Murphy for Deposition. ..................................................................................... 29

      D.    The Court Should Award Southwest its Attorneys' Fees. .................. 31

IV.   Conclusion. .......................................................................................... 31

Certificate of Word Count .......................................................................... 32

Certificate of Service .................................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Alizadeh v. Katebian*,
No. CV 20-12372, 2021 WL 2638048 (E.D. Mich. June 1, 2021),
*report and recommendation adopted*, No. CV 20-12372, 2021 WL 2635443
(E.D. Mich. June 25, 2021). ............................................................................ 21

*Babcock Power, Inc. v. Kapsalis*,
No. 3:13-CV-717-CRS-CHL, 2016 WL 4132302
(W.D. Ky. Aug. 3, 2016)................................................................................... 24

*Cloud v. Cumulus Media New Holdings, Inc.*,
No. 3:22-CV-1673-N, 2023 WL 2700722
(N.D. Tex. Mar. 29, 2023). .............................................................................. 31

*Disability Rights New Jersey, Inc. v. Velez*,
No. CIV. 10-3950 DRD, 2011 WL 2937355
(D.N.J. July 19, 2011). ............................................................................... 21, 22

*Equal Employment Opportunity Commission v. Matamoros*,
No. 15-1563-RAJ, 2017 WL 5707951
(W.D. Wash. Mar. 8, 2017)............................................................................... 26

*Hernandez v. State Farm Lloyds*,
No. 3:24-CV-2942-D, 2025 WL 2085928
(N.D. Tex. July 24, 2025)........................................................................... 12, 31

*Longoria v. County of Dallas*,
No. 3:14-CV-3111-L, 2016 WL 728559
(N.D. Tex. Feb. 24, 2016)................................................................................. 27

*Lopez v. Reliable Clean-Up & Support Services LLC*,
No. 3:16-CV-2595-D, 2017 WL 6611615 (N.D. Tex. Nov. 15, 2017),
*objections overruled*, 2017 WL 6611578 (N.D. Tex. Dec. 27, 2017). ............. 27

*Memphis Invest, GP v. Waite*,
No. 2:13-CV-01282-JAD-NJ, 2014 WL 547962
(D. Nev. Feb. 11, 2014). ............................................................................ 12, 25

*Ocean Garden Products Inc. v. Blessings Inc.*,
No. CV-18-00322-TUC-RM, 2020 WL 570947
(D. Ariz. Feb. 5, 2020). .................................................................................... 21

*Rohwer v. Warner Bros. Discovery, Inc.*,
No. 2:25-CV-01284-RSL, 2025 WL 3628626
(W.D. Wash. Dec. 15, 2025). ............................................................................ 21

*Southwest Airlines Pilots Association v. Southwest Airlines Co.*,
120 F.4th 474 (5th Cir. 2024). ......................................................................... 14

*Trial v. Atchison, Topeka & Santa Fe Railway Co.*,
896 F.2d 120 (5th Cir. 1990). .......................................................................... 13

## Rules

FED. R. CIV. P. 26(c). ...................................................................................... 27

FED. R. CIV. P. 37(a). ................................................................................. 12, 31

FED. R. CIV. P. 37(d) ...................................................................................... 31

## I.    Introduction

Around 8 P.M. on the night of February 10, 2021, Captain Tim Roebling was at the DoubleTree Hotel near Dallas Love Field.[1]  He was at the bar, had been drinking Miller Lites on an empty stomach, and was waiting for his friends to arrive.[2] When a fellow pilot walked up wearing blue suede shoes, a text thread began about what man would make such a bold fashion choice.  A female pilot wrote: "Elvis." Captain Roebling responded: "Vagina!!!"[3]    An employee relations (ER) investigation ensued at Southwest after a senior pilot reported Captain Roebling because he was "tired of his filth."[4]

Under longstanding and well-known company policy, Captain Roebling was required to keep the ER investigation confidential.[5]  Yet within ninety minutes of being contacted by ER, he called his friend and fellow pilot, Doyle Hill, to discuss the ER investigation.[6]  The text exchange that followed took a dark turn.  Convinced that Captain Roebling was being targeted by his supervisor, Captain Chris Meehan, Captains Hill and Roebling began discussing threatening and hurting him.

---

[1]        App. 9 (Roebling Dep. 95:9-17).

[2]        App. 10 (Roebling Dep. 96:3-97:10).

[3]        App. 9 (Roebling Dep. 95:24-96:2); App. 12 (Roebling Dep. 104:15-20).

[4]        App. 144 (Ryan Decl. ¶ 26 & Ex. O).

[5]        App. 13 (Roebling Dep. 136:14-137:01).

[6]        App. 16 (Southwest Dep. Ex. 46 at SWAPA 4739).

As recorded in text messages that SWAPA produced months after Captain Roebling's deposition (but still hasn't produced in full), Captain Hill asked Captain Roebling for help finding Captain Meehan's car. Captain Roebling responded in under a minute, first with a racist comment that ER was also investigating, and then with the information Captain Hill requested:[7]



Three days later, Captain Hill next proposed conspiring with Captain Roebling to have Captain Meehan solicited by a prostitute, robbed by her pimp friends, and drowned:[8]

---

[7]    App. 21 (Southwest Dep. Ex. 46 at SWAPA 4744).

[8]    App. 31 (Southwest Dep. Ex. 46 at SWAPA 4754).

Captain Roebling's only objection to this plan?   It wouldn't work, because Captain Meehan "lives in Dallas," so he doesn't stay at the DoubleTree.[9]

Captain Hill wasn't the only Southwest pilot to demean his profession in text messages with Captain Roebling.   When Captain Roebling told Captain Paul Murphy, another one of his "bros," about the ER investigation, the two men believed that Captain John Reed (also known as "JR") had reported the "Vagina!!!" comment to ER.   He hadn't.   But Captain Murphy thought he had, so he wrote:[10]



---

[9]      App. 32 (Southwest Dep. Ex. 46 at SWAPA 4755).

[10]     App. 64 (Southwest Dep. Ex. 27 at SWAPA 4192).

Egged on by Captain Roebling, Captain Murphy continued:[11]



Captain Murphy's unprofessional behavior didn't stop there.  He and Captain

Roebling decided to fake being sick to get out of work but still get paid:[12]



---

[11]    App. 55 (Southwest Dep. Ex. 27 at SWAPA 4193).

[12]    App. 80 (Southwest Dep. Ex. 27 at SWAPA 4208).

And they made racist jokes about Puerto Ricans, including Captain Murphy sending Captain Roebling this Urban Dictionary definition:[13]

## Puerto Rican Pullout

When preforming unprotected **intercourse** the male does not pullout during climax. He simply "pulls out" of his partners life and flees the country, avoiding all risks of fathering a child. (**Originated** in **Puerto Rico**)

Southwest asked to depose Captains Hill and Murphy. Both have evidence about a key Southwest defense: that Captain Roebling's repeated unprofessional behavior justified removing his check pilot qualifications. Their behind-closed-doors mockery of the ER investigation also puts the lie to SWAPA's claim that Captain Roebling should be forgiven because he apologized for his "Vagina!!!" message. These witnesses also know that Captain Roebling lied when he testified that he "kept [his] conversations with employee relations confidential" from "other pilots" at Southwest.[14]

Southwest asked SWAPA to coordinate these depositions and accept notices for Captains Hill and Murphy. SWAPA agreed. Southwest noticed their depositions on the first date offered: May 5, 2026. Then, at the last minute, SWAPA refused to produce either witness on the grounds that ER is now investig[ating]

**EXHIBIT**
**028**

---

[13]    App. 96 (Southwest Dep. Ex. 27 at SWAPA 4224); App. 97 (Southwest Dep. Ex. 28).

[14]    App. 13 (Roebling Dep. 136:14:137:1).

messages.  SWAPA brought this lawsuit.  It cannot now refuse to present witnesses for deposition because it realizes their racist, sexist, dishonest, and threatening off-duty conduct will be covered during their examination.  Nevertheless, SWAPA cries witness intimidation for two reasons.  Neither has merit.

*First*, SWAPA contends the timing of the ER investigations was coordinated to affect the pilots' testimony.  But Southwest told SWAPA—before it filed its motion—that the ER investigations were initiated in mid-April 2026, weeks before the depositions.  The ER investigations have since proceeded independently without any involvement from Captain Meehan or coordination with deadlines in this lawsuit.  Indeed, SWAPA's own motion admits (at 12-13) that Southwest disclosed the existence of the ER investigations in a Rule 30(b)(6) deposition taken almost ***two weeks*** before Captains Hill and Murphy were to be deposed.  Yet SWAPA never complained of witness intimidation until Southwest repeatedly pushed for the full disclosure of Captain Hill's text messages with Captain Roebling.

*Second*, SWAPA asserts that the ER investigations have affected the witnesses' mental states.  Both claim to be "disturb[ed]"[15] and "anxi[ous]"[16] that their deposition testimony "could be used against" them later.[17]  But that's true of

---

[15]    ECF No. 92, App. 010 (Murphy Decl. ¶ 11).

[16]    ECF No. 92, App. 004 (Hill Decl. ¶ 10).

[17]    *Id*.; *see also* ECF No. 92, App. 010 (Murphy Decl. ¶ 11).

any witness's deposition.  An accountant who is confronted with proof of embezzlement may be fired.  A truck driver who admits to being distracted while driving could be charged with a moving violation or even a crime.  Fear of being deposed is not tantamount to witness intimidation.  Rather, a protective order for witness intimidation turns on whether the witness "will in any way change her testimony based on" the alleged intimidation.  *Memphis Invest, GP v. Waite*, No. 2:13-CV-01282-JAD-NJ, 2014 WL 547962, at *5 (D. Nev. Feb. 11, 2014).  Here, the pilots swear their story remains the same.  Using nearly identical language, they both declared that "no reasonable, unbiased person" could interpret their messages as "a threat of violence."[18]  This fact (among others detailed below) defeats SWAPA's witness intimidation narrative.

Finally, Southwest told SWAPA that it would cross-move to compel—and seek reimbursement of its fees from SWAPA and its counsel—if it did not present the witnesses for deposition and filed its protective order.  SWAPA's motion claims (at 3) that this demand was an "unwarranted" "act of aggression and retaliation."  Wrong again.  An award of attorneys' fees (against both party and counsel) is the textbook penalty if a witness "after being served with proper notice, fails to appear for her deposition," *Hernandez v. State Farm Lloyds*, No. 3:24-CV-2942-D, 2025

---

[18]    ECF No. 92, App. 009 (Murphy Decl. ¶ 9); *accord id*. at App. 004 (Hill Decl. ¶ 7).

WL 2085928, at *3 (N.D. Tex. July 24, 2025), or if a party wrongly refuses to produce responsive documents. FED. R. CIV. P. 37(a)(5).

In the end, Southwest and SWAPA agree on one point: these discovery motions are an emergency. Summary judgment motions are due in less than a month. These witnesses have critical testimony on Southwest's defense. But SWAPA has refused to produce them and is still withholding essential parts of Captain Hill's text messages with Captain Roebling. The Court should therefore hold an emergency hearing, deny SWAPA's motion for protective order, and grant Southwest's cross-motion to compel.

## II. Relevant Procedural Background[19]

SWAPA sued Southwest for violating the Railway Labor Act by engaging in anti-union animus related to a certain group of pilots known as check pilots.[20] Captain Roebling was a check pilot.[21] He lost his check pilot qualifications in 2021 because of repeated unprofessional conduct, including his "Vagina!!!" message.[22]

---

[19]     Much of SWAPA's Motion previews its summary judgment opposition. Southwest will address these incorrect recitations of material facts and misapplication of law in due course. For now, Southwest focuses on the discovery issues before the Court.

[20]     *See generally* ECF No. 77, ¶¶ 4-5 & 16-48. SWAPA's Motion spends several pages (at 4-6) arguing that Southwest violated the Railway Labor Act in 2018. The applicable statute of limitations under the RLA is six months. *Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 124 (5th Cir. 1990). SWAPA didn't file this lawsuit until October 2021. *See generally* ECF No. 1. SWAPA's rehashing of time-barred RLA claims is even more reason to allow this case to proceed to summary judgment, so its long-expired theories can be dismissed.

[21]     *See* ECF No. 13-1, ¶¶ 5-6.

[22]     *Id*. ¶¶ 7-12.

SWAPA disagrees, claiming Captain Roebling's alleged unprofessionalism is just a pretext for Southwest's retaliation because he briefly was a member of SWAPA's Check Airmen Committee.[23]  In 2022, Captain Roebling applied to be re-instated as a check pilot.  His application was denied because he had told other pilots that he "did nothing to warrant the removal of [his] qualifications."[24]  SWAPA also alleges Southwest's denial of Captain Roebling's reinstatement application was unlawful retaliation.[25]

After this Court dismissed the case, the Fifth Circuit reversed.  SWAPA incorrectly argues (at 20) that the Fifth Circuit has "credited" its pretext and retaliation theories of the case.  Not so.  The Fifth Circuit merely held that SWAPA "sufficiently pleaded the animus exception" under the RLA and allowed the plaintiff to proceed to discovery.  *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.*, 120 F.4th 474, 486 (5th Cir. 2024).

In discovery, SWAPA produced text messages between Captain Roebling and other pilots, especially those it thought favorable to its case.  SWAPA's production of text messages began in July 2022 and continued after the appeal.[26]  In 2025 alone,

---

[23]     *See* ECF No. 77, ¶¶ 29-37.

[24]     *See* ECF No. 77, ¶ 52.

[25]     *See* ECF No. 77, ¶¶ 51-58.

[26]     App. 2 (Ryan Decl. ¶¶ 7-9).

SWAPA made six productions of Captain Roebling's text messages—but none with Doyle Hill.[27]

Captain Roebling was deposed on September 24, 2025.[28]  Shortly thereafter, Southwest asked SWAPA to "supplement Captain Roebling's text messages with all" his text messages "concerning" "the ER Investigation."[29]  SWAPA agreed and produced additional responsive text messages on October 30, 2025.[30]  Still, SWAPA produced no Doyle Hill messages.[31]

In the end, SWAPA didn't produce Captain Hill's text messages until March 5, 2026.[32]  About 3 years and 8 months passed between SWAPA's first production of pilot text messages and its production of Captain Hill's texts.  Even after the appeal, ten months passed between SWAPA's first production of pilot messages and its production of Captain Hill's texts.  No explanation has been given for why it took SWAPA years to produce Captain Hill's messages.

After Southwest's counsel returned from Spring Break and an out-of-town trial, Southwest requested deposition dates for Captains Hill and Murphy.[33]  On April

---

[27]     *Id.*

[28]     App. 1 (Ryan Decl. ¶ 2).

[29]     App. 120 (Ryan Decl., Ex. K).

[30]     *Id.*; *see also* App. 2 (Ryan Decl. ¶ 8).

[31]     App. 2 (Ryan Decl. ¶¶ 8-9).

[32]     App. 2 (Ryan Decl. ¶ 9).

[33]     App. 3 (Ryan Decl. ¶ 11).

8, 2026, SWAPA promised it was "working to coordinate" those depositions.[34] One week later, Southwest's first Rule 30(b)(6) witness, former SWAPA President Carl Kuwitzky, was deposed.[35] Captain Kuwitzky disclosed to SWAPA that Captain Hill's text messages were "all under review."[36] Still, two days later, SWAPA offered Captains Hill and Murphy for deposition on May 5, 2026. Southwest agreed and noticed the depositions on April 21, 2026.

Two days after it noticed the depositions, Southwest's second Rule 30(b)(6) witness, Captain Chris Meehan, testified.[37] He expressly testified that Captain Hill's text messages had been reported to Southwest's ER department, which was investigating.[38] Still, SWAPA did not cry witness intimidation or pull down the upcoming May 5 depositions.

Instead, Southwest and SWAPA continued to discuss the incomplete production of Captain Hill's text messages. The messages are paginated to show a 123-page document, but SWAPA only produced 31 pages of Captain Hill's texts. This production excluded Captain Hill's text messages with Captain Roebling on key dates including: (1) the date on which Captain Roebling received verbal

---

[34] *Id.*

[35] App. 3 (Ryan Decl. ¶ 13).

[36] App. 101 (Kuwitzky Dep. 131:12-24).

[37] App. 4 (Ryan Decl. ¶ 16).

[38] *Id.*

counseling from his chief pilot because of the ER investigation; (2) the dates on which Captain Roebling knew of an upcoming meeting with Captain Meehan about the ER investigation; and (3) the days that Southwest removed Captain Roebling's check pilot qualifications and he responded with anger at the decision.

Southwest wrote SWAPA on April 27, 2026, to ask that the remaining texts be produced "[i]n advance of the Doyle Hill deposition."[39]  Again, SWAPA did not object that Southwest was trying to intimidate Captain Hill.  Instead, it produced some additional documents but withheld others, including texts sent on the days surrounding the removal of Captain Roebling's check pilot qualifications.[40]  Even so, SWAPA's additional production again confirmed that Captains Hill and Roebling were mocking the ER investigation into the "Vagina!!!" text message:[41]



---

[39]     App. 106 (Ryan to Sanford 4/27/26 Email).

[40]     App. 107 (Sanford to Ryan 4/30/26 Email).

[41]     App. 113 (SWAPA 4871).

Southwest therefore continued to ask SWAPA to produce the entire text exchange between Captains Hill and Roebling.  On the morning of May 1, 2026, Southwest renewed its request for the full text chain and responded to SWAPA's objections to producing it, noting this request was "time-sensitive" because Captain Hill was being deposed "in 4 days."[42]

SWAPA did not respond.  Instead, after 7 P.M. on May 1, 2026, SWAPA claimed that it would file a protective order to preclude Southwest from deposing Captains Hill and Murphy because Captain Hill had just learned his text messages were the subject of an ER investigation.[43]  Southwest opposed the legal and factual basis for any protective order in a lengthy email meet-and-confer.[44]  Southwest also renewed its request for the complete text exchange between Captains Hill and Roebling.  Shortly thereafter, SWAPA confirmed it would file an Emergency Motion for Protective Order to avoid presenting Captains Hill and Captain Murphy for their properly noticed depositions.[45]

### III.    SWAPA's Baseless Attacks on Captain Meehan

SWAPA's Motion manufactures (at 16, 21) a narrative where Captain Meehan is allegedly "personally engag[ing] in pre-deposition conduct" that is the "operative

---

[42]    App. 114 (Ryan to Sanford 5/1/26 Email).

[43]    App. 117-118 (Gillespie to Ryan 5/1/26 Email).

[44]    App. 119-21 (Ryan to Gillespie 5/4/26 Email).

[45]    App. 121-22 (Gillespie to Ryan 5/4/26 Email).

source of [witness] intimidation."  Captain Meehan has been a Southwest pilot for 31 years.  He's been a SWAPA member that entire time.  And SWAPA has no basis—besides conjecture—to smear Captain Meehan as not only anti-union, but essentially a mob boss engaged in witness tampering.

Start with Captain Nancy Martin-Belitz.  SWAPA claims (at 3, 16-17) that Captain Meehan's discussion with Captain Martin-Belitz about the text messages SWAPA identified as comparable to Captain Roebling's "Vagina!!!" message is proof of witness intimidation.  But Captain Martin-Belitz testified otherwise—that Captain Meehan was not trying to scare her before her deposition:

> Q.    ***Do you think*** a jury might think that you—that ***Capt. Meehan was attempting to scare you*** before your deposition?
>
> A.    ***No.  It was a very friendly conversation***.[46]

She also testified that she does not fear retaliation from Southwest:

> Q.    All right.  Do you -- ***are you afraid for retaliation*** of your testimony today?
>
> A.     From who?
>
> Q.    From the company.
>
> A.    ***I trust the company.  I'm not afraid of retaliation***. However, it doesn't help in any manner.[47]

---

[46]    App. 133-134 (Martin-Belitz Dep. 191:24-192:3 (emphasis supplied)).

[47]    App. 132 (Martin-Belitz Dep. 86:12-18 (emphasis supplied)).

The only way to reach the conclusion that Captain Meehan intimidated Captain Martin-Belitz is to ignore her sworn testimony. It is therefore frivolous for SWAPA to suggest, as its Motion does (at 16-17), that a protective order is warranted because of a "very friendly" conversation that Captain Meehan had with her.

Next, SWAPA alleges (without any evidence) that Captain Meehan is also behind the ER investigations of Captains Hill and Murphy. Not so. Captain Bob Pieknik—not Captain Meehan—reported the pilots' text messages to ER on April 14.[48] The matter was assigned to Orlando Rivera, an ER investigator, the next day.[49] He did not request interviews of Captains Hill and Murphy until May 1, 2026, because: (a) there were over 80 pages of text messages to review first; and (b) he was working on other cases. Mr. Rivera had no idea about any deadlines in this lawsuit, including the upcoming depositions of Captains Hill and Murphy.[50]

As is the normal process, Mr. Rivera called the domicile chief pilots for Captains Hill and Murphy to arrange their ER interviews.[51] Like Mr. Rivera, the domicile chief pilots testified that Captain Meehan has made no attempt to interfere with or influence the ER investigations about these text messages.[52] Instead, every

---

[48]    App. 145-46 (Pieknik Decl. ¶¶ 2-3).

[49]    App. 147 (Rivera Decl. ¶¶ 2-3).

[50]    App. 148 (Rivera Decl. ¶ 4).

[51]    App. 148 (Rivera Decl. ¶¶ 5-6).

[52]    App. 149 (Rivera Decl. ¶ 8); App. 151 (Miller Decl. ¶ 6); App. 154 (Bawcum Decl. ¶ 6)

witness—Captain Pieknik, Mr. Rivera, and the domicile Chief Pilots—has testified that these ER investigations are proceeding as one typically would.[53]  Despite the fever dream conjured up in SWAPA's Motion, there is absolutely no basis to allege that Captain Meehan is the puppeteer behind ER investigations intended to influence the depositions of Captains Hill and Murphy.

## IV.    Arguments and Authorities

### A.    SWAPA's Witness Intimidation Argument Wholly Lacks Merit.

A protective order based on alleged witness intimidation seeks "extraordinary" relief. *Rohwer v. Warner Bros. Discovery, Inc.*, No. 2:25-CV-01284-RSL, 2025 WL 3628626, at *1 (W.D. Wash. Dec. 15, 2025).  A "high bar" has thus been set for such motions.  *Alizadeh v. Katebian*, No. CV 20-12372, 2021 WL 2638048, at *2 (E.D. Mich. June 1, 2021), *report and recommendation adopted*, No. CV 20-12372, 2021 WL 2635443 (E.D. Mich. June 25, 2021) (denying such a motion even when the defendant told a witness "I will fuck with [your] life").

Relevant here, a motion for protective order alleging witness intimidation cannot be "based solely upon irrational fears or mere conjecture." *Disability Rights New Jersey, Inc. v. Velez*, No. CIV. 10-3950 DRD, 2011 WL 2937355, at *5 (D.N.J. July 19, 2011); *see also Ocean Garden Products Inc. v. Blessings Inc.*, No. CV-18-

---

[53]    App. 146 (Pieknik Decl. ¶ 6); App. 149 (Rivera Decl. ¶ 8); App. 152 (Miller Decl. ¶ 8); App. 154 (Bawcum Decl. ¶ 8).

00322-TUC-RM, 2020 WL 570947, at *3 (D. Ariz. Feb. 5, 2020) (denying motion for protective order because "concerns regarding witness intimidation were, without further corroborating evidence, too speculative to establish good cause"). As a result, courts across the nation have denied motions for protective orders like SWAPA's for four reasons that are also present here.

*First*, there is nothing "in any way improper or punitive" about Southwest commencing an ER investigation of these text messages. *Velez*, 2011 WL 2937355, at *5. On their face, these text messages include threats of violence against co-workers, sexist language, admitted abuse of sick leave, and repeated racist slurs. SWAPA's Motion only contests one part of these messages—that they cannot be properly construed as threatening physical violence. They are instead "attempts at humor"[54] or "joke[s],"[55] intended to be "lighthearted and playful."[56] For example, SWAPA refers (at 13) to Captain Hill's message about hiring a prostitute at the DoubleTree as a "honey trap." SWAPA uses this term to invoke a James Bond movie where an attractive woman seduces a spy to hack his phone. But recall what Captain Hill proposed: that Captain Roebling hire a prostitute; that she gets Captain Meehan drunk; that she takes compromising photos of him; that she calls

---

[54]   ECF No. 92, App. 004 (Hill Decl. ¶ 7).

[55]   ECF No. 92, App. 009 (Murphy Decl. ¶ 9).

[56]   *Id*.

her friends to come rob him; and that they end the night by throwing a drunk Captain Meehan into the Trinity River.  What's more, Captain Hill proposed this scenario of physical harm only after asking Captain Roebling to identify Captain Meehan's car and where he parked it.  SWAPA makes much of the fact that no harm ever came to Captain Meehan.  But if Captain Meehan had known of these texts in 2021, he would have felt threatened, would have been constantly looking over his shoulder, and would have reported Captain Hill not only to ER, but also Southwest's corporate security and the Dallas Police Department.[57]

In any event, there's nothing improper about Southwest investigating Captain Hill's and Captain Murphy's threatening and offensive text messages.  For example, SWAPA's corporate representative, President Jody Reven, testified that racism and sexism are "wrong" "in any context"[58]—whether SWAPA pilots are "on or off the clock."[59]  And SWAPA does not dispute that Captains Hill and Murphy both used slurs against Puerto Ricans.  Or that Captain Hill routinely used the word "Vagina!!!" to mock the ER investigation of Captain Roebling:[60]

---

[57]    App. 156 (Meehan Decl. ¶ 5).

[58]    App. 126 (Reven Dep. 70:7-9).

[59]    App. 127 (Reven Dep. 75:7-11).

[60]    App. 28-29 (Southwest Dep. Ex. 46 at SWAPA 4751-4752).





If SWAPA truly believed this behavior had no place at Southwest, it should have no

problem admitting on reply that an ER investigation of these pilots is proper.

*Second*, alleged witness intimidation—even a "belligerently worded" letter—

will not "necessitate a protective order, especially in the absence of actual evidence

of witness intimidation and harassment." *Babcock Power, Inc. v. Kapsalis*, No. 3:13-

CV-717-CRS-CHL, 2016 WL 4132302, at *3 (W.D. Ky. Aug. 3, 2016). Here, SWAPA alleges nothing more than the pilots have been told they are being investigated by ER. As SWAPA knows, an investigation is not the same as discipline. Indeed, SWAPA's Motion notes (at 8-9) that the prior ER investigations related to Captain Roebling's February 10th text messages resulted in three letters of counseling—none of which are discipline under the Collective Bargaining Agreement.[61] Despite this fact, SWAPA's motion jumps to the conclusion that the investigations could "end[ ] a pilot's career at Southwest."[62] But Captains Hill and Murphy have not been told their careers are at risk. Like any corporate witness, they are simply worried about how their deposition testimony might affect their future. If that were witness intimidation, no witness would ever testify.

*Third*, courts have found no witness intimidation when, as here, the witnesses were "free to end any communications directed toward" them "at any time." *Waite*, 2014 WL 547962, at *5. SWAPA's Motion omits that Captains Hill and Murphy could refuse to be interviewed for the ER investigation. If "no reasonable, unbiased person" could interpret their messages as improper,[63] as their declarations claim, then they have nothing to fear. But Captains Hill and Murphy cannot refuse to

---

[61]    App. 128-129 (Reven Dep. 273:24-274:8).

[62]    ECF No. 92, App. 004 (Hill Decl. ¶ 9); *id*. at App. 010 (Murphy Decl. ¶ 10).

[63]    ECF No. 92, App. 009 (Murphy Decl. ¶ 9); *accord id*. at App. 004 (Hill Decl. ¶ 7).

appear for a deposition. SWAPA brought this lawsuit. It cannot now refuse to present witnesses for deposition because it realizes their racist, sexist, dishonest, and threatening off-duty conduct will be covered during their examination.

*Fourth*, as noted above, witness intimidation claims fail when the witness's story "will [not] in any way change." *Waite*, 2014 WL 547962, at *5. Captains Hill and Murphy have now staked out their story in the declarations attached to SWAPA's Motion. There is no reason to believe their testimony will change, so no protective order is necessary.

*Fifth*, even if the pilots had a credible fear of witness intimidation or retaliation (and they do not), "already-existing laws, which all parties must observe, are sufficient protections against witness retaliation and render a protective order unnecessary." *Equal Employment Opportunity Comm'n v. Matamoros*, No. 15-1563-RAJ, 2017 WL 5707951, at *1 (W.D. Wash. Mar. 8, 2017). Here, the CBA protects the pilots against unlawful retaliation. There is no need to jump the gun—before any alleged retaliation has even occurred—to bar their depositions.

Southwest provided all these cases and arguments to SWAPA before it sought a protective order. But none are addressed in SWAPA's Motion. Instead, SWAPA merely argues (at 18-21) the Court possesses the inherent power to grant some type of a protective order based on witness tampering. This argument falls wide of the mark. Southwest never argued the Court couldn't grant a protective order. It instead

argued that the Court ***shouldn't*** grant a protective order ***on these facts***.  SWAPA proved this point by failing to locate a single case—anywhere—when any court granted a protective order on similar facts.

Indeed, SWAPA admits (at 20) that its sole case,[64] *Lopez v. Reliable Clean-Up & Support Services LLC*, No. 3:16-CV-2595-D, 2017 WL 6611615, at \*3 (N.D. Tex. Nov. 15, 2017), *objections overruled*, 2017 WL 6611578 (N.D. Tex. Dec. 27, 2017), "denied the requested protective order" from alleged witness intimidation.  In that case, the plaintiffs sought a protective order prohibiting their employer from threatening to call immigration if they participated in an FLSA lawsuit.  Here, Southwest has not threatened Captains Hill or Murphy.  It is simply allowing the normal ER process to take its course.  And they are not being investigated because of the lawsuit—they are being investigated because vulgar, offensive, and threatening language has no place at Southwest, as SWAPA's President testified.

### B.     The Relief Sought by SWAPA is Untethered to Rule 26(c).

SWAPA's Motion seeks five types of relief.  ECF No. 91 at 25.  Some of the first form of relief—quashing the Hill and Murphy depositions—is plainly authorized by Fed. R. Civ. P. 26(c).  Nearly everything else isn't.

---

[64]     SWAPA also cites (at 18) *Longoria v. Cnty. of Dallas*, No. 3:14-CV-3111-L, 2016 WL 728559, (N.D. Tex. Feb. 24, 2016), but that case concerned when a witness could not attend a deposition because it would intimidate the deponent.  *Id.* at \*3.  No one from ER is attending (or will attend) these pilots' depositions.

For example, SWAPA asks that these pilot depositions be paused until any disciplinary process plays out. This could take months or even years. The scheduling order here calls for summary judgments in roughly 30 days. No caselaw supports SWAPA smuggling an indefinite continuance motion into a motion for protection.

Next, SWAPA asks (at 25) that Southwest be ordered to not "initiat[e] any new disciplinary action against any SWAPA-affiliated witness" if the process is based on "communications, conduct, or statements" "more than two years" old. But no Southwest policy restricts ER investigations to only actions within a two-year period. This requested relief is therefore at odds with the Motion's proclamation (at 3) that SWAPA "is not asking the Court to enjoin Southwest's HR or ER functions." But that's exactly what SWAPA is asking the Court to do.

In that same vein, SWAPA also asked the Court (at 25) to order that Captain Meehan cannot initiate "any disciplinary process" against any SWAPA-affiliated witnesses without pre-clearance from SWAPA or the Court. That is hogwash. Hundreds of check pilots have reported to Captain Meehan during his impeccable career. Only two—Captains Roebling and Murphy—have alleged he misused any disciplinary or non-disciplinary process. Their claims are questionable for many reasons, not the least of which is that these same two men engaged in the vulgar, threatening, and dishonest conduct depicted above.

Finally, SWAPA demands (at 25) that Southwest "issue a statement" to all potential witnesses "reiterating its non-retaliation policy" and "advising of the Court's protective order." But SWAPA has demonstrated no need for Southwest to remind its employee of a policy that has always been in effect. What's more, nearly every witness is a pilot—and SWAPA member. If the union truly believes that Captain Meehan is the boogeyman, it can send its own reminder of Southwest's non-retaliation policies, without the need for any court order.

Thus, even if the Court entertained SWAPA's witness intimidation speculation, barely any of the relief in the motion for protective order can be granted.

### C.    The Court Should Compel SWAPA to Produce the Entire Hill-Roebling Text Chain and Present Captains Hill and Murphy for Deposition.

In January 2022, over four years ago, Southwest served this document request on SWAPA:

> **REQUEST NO. 4:** Any and all correspondence (including, but not limited to, letters, notes, memoranda, text messages, and email messages) that you or Roebling sent to, or received from, any of Defendant's current or former employees regarding the subject matter of this Lawsuit, including, without limitation, (i) the claims in this Lawsuit, (ii) the allegations contained in the Complaint; (iii) the removal of Roebling's check airman duties, and/or (iv) alleged anti-union animus and/or retaliatory conduct by Defendant.

SWAPA agreed to produce responsive documents, subject to some objections that are not relevant here:

RESPONSE:  Plaintiff objects to this request on the grounds that it calls for privileged employee-union representative communications and privileged attorney-client communications.  Plaintiff objects that this request is overly broad and lacks sufficient specificity.

Plaintiff is producing responsive documents.

As noted above, SWAPA then made seven productions of text messages in 2022 and 2025.  None included Captain Hill's text messages.  Then SWAPA produced just 31 pages of the 123-page Hill-Roebling text chain.  SWAPA omitted critical pages (such as pages 25 through 28), which include text messages between March 26 and 27—the two days after Captain Roebling lost his check pilot qualifications.  Besides those pages, SWAPA also omits pages 31-35, 37-77, 80, 83-84, 86-92, and 94-123 of the Hill-Roebling chain.

To date, SWAPA's has responded only that it deemed these remaining pages irrelevant.  But there is substantial reason to doubt SWAPA's determination of relevance.  For years, it didn't consider Captain Hill's texts relevant at all.  Since then, it has parsed them out after demands from Southwest but has now refused to provide any more.  Rather than produce allegedly irrelevant documents, SWAPA instead filed a motion alleging witness intimidation.  This conduct creates a strong inference that SWAPA is hiding something in Captain Hill's texts.  After all, if the texts are irrelevant, there is nothing to hide.

Finally, it's beyond dispute that Captains Hill and Murphy did not show up for properly noticed depositions.  Even if the motion for protective order provides

some excuse, that motion should be swiftly denied.  SWAPA should therefore be ordered to produce the complete Hill-Roebling text chain and promptly present Captains Hill and Murphy for their depositions.

## D.    The Court Should Award Southwest its Attorneys' Fees.

Under FED. R. CIV. P. 37(d), the Court may order sanctions if a deponent, after being served with proper notice, fails to appear for his deposition.  *Hernandez*, 2025 WL 2085928, at *3.  And "the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure."  FED. R. CIV. P. 37(d)(3) (emphasis supplied); *accord* FED. R. CIV. P. 37(a)(5) ("the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").  As shown above, SWAPA's motion for protective order is merely a pretext to delay while it hides likely even more damaging text messages.  *Cloud v. Cumulus Media New Holdings, Inc.*, No. 3:22-CV-1673-N, 2023 WL 2700722, at *2 & n.5 (N.D. Tex. Mar. 29, 2023) (awarding fees and expenses when deponent's counsel "pursued an unsupported motion in an improper attempt to invoke the protection of Rule 37(d)(2)").  Thus, the Court should require SWAPA and its attorneys to pay Southwest's reasonable attorneys' fees and expenses caused by their baseless pursuit of this protective order.

## V.    Conclusion

For these reasons the Court should: (1) deny SWAPA's Emergency Motion for a Protective Order; (2) grant Southwest's cross-motion to compel; (3) order the SWAPA to produce the full Hill-Roebling text chain within three business days; and (4) order Captains Hill and Murphy to appear for depositions within five business days.  Finally, the Court should award Southwest its reasonable attorneys' fees and costs incurred with filing this motion.

This 5th day of May 2026.

Respectfully submitted,

/s/ Andrew B. Ryan
Andrew B. Ryan
Texas Bar No. 24054464
Mitchell R. Garrett
Texas Bar No. 24101795
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
T: (214) 347-7377
F: (888) 594-6240
E: andy@ryanlawpartners.com
E: mitch@ryanlawpartners.com

*Counsel for Defendant*
*Southwest Airlines Co.*

## CERTIFICATE OF WORD COUNT

I certify the word count for this Brief, not including the case caption, signature blocks, and certificates is 5,153.

/s/ Andrew B. Ryan
Andrew B. Ryan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2026, a true and correct copy of this document was served on counsel for all parties using the Court's PACER/ECF system.

<u>/s/ Andrew B. Ryan</u>
Andrew B. Ryan